The State of Ohio, Appellee, v. Winbush, Appellant.

[Cite as State v. Winbush (1975), 44 Ohio App. 2d 256.]

(No. 74AP-540—Decided June 10, 1975.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellee.

*Mr. Gerald G. Simmons,* for appellant.

Strausbaugh, J. This is an appeal by the defendant from a conviction in the Court of Common Pleas for aggravated assault, aggravated burglary, and voluntary manslaughter.

The record indicates that the defendant and his estranged wife, the deceased, were first married in 1956, were divorced in 1960, and married the second time in 1967. A number of children were born of the marriage. Prior to the incident, the couple had separated and were living apart in separate dwellings. The defendant had consulted an attorney about instituting divorce proceedings. About 3:30 a. m. on July 25, 1974, the defendant left his home at 832 Ann Street and drove to the residence of the decedent at 347

Loeffler, where the decedent was in bed with her paramour, a Mr. Raymond Miller, in a first floor bedroom. The children were asleep on the second floor. When the defendant, armed with a shotgun, knocked on the front door and demanded entrance, his wife refused (according to testimony of the defendant); whereupon, defendant broke out the glass in a door on the front porch with the butt of his weapon, at which time the shotgun fired. At this time, Miller awoke and fled from the house by the back door, clad only in his shorts (according to Miller's testimony). The defendant, who stated he heard movements in the bedroom, removed his shoes on the front porch and quickly ran to the rear where he met Miller (whom defendant described as follows: "Like he was glowing. He was stark-brick naked" and twice shot Miller with the shotgun. A scuffle developed. Miller stated he heard the shotgun misfire and was able to escape.

Meanwhile, the wife had gone up to the second floor and asked her daughter to call the police. The defendant then entered the house through the front door. The daughter testified she heard her father call her mother by name, "Carol," and then he came up the stairs and called "Carol" again. She testified that he said "he killed that other man," and her mother said: "No, Thiny!" Her father then said: "Come on out. I ain't going to kill you!" Her mother replied: "No, Thiny, I can't take that for an answer!" So it was about two or three seconds and then a shot. She fell to the floor. She stated that she saw her mother, but she did not see her father; that she lay down because she was frightened, but did not stay there long because her father kicked the door open and told her to call the ambulance; that she had seen the gun at various times at home, and that she saw her father with it that night after he shot her mother. The defendant left the premises and in a short while turned himself in to the police.

The defendant was indicted for aggravated burglary, R. C. 2911.11, aggravated murder, R. C. 2903.01, and felonious assault, R. C. 2903.11. The jury found the defendant not guilty of aggravated murder, but guilty of volun-

tary manslaughter, aggravated assault, and aggravated burglary from which this appeal is taken.

Defendant's first assignment of error states:

"The verdict, judgment and subsequent sentence on the aggravated burglery charge are contrary to law and must be set aside."

Defendant contends:

"[A] man who is legally married and not under any restraining order from a court of competent jurisdiction, cannot be deemed to trespass upon the dwelling of his spouse, hence he cannot commit the act of aggravated burglary within the meaning of the law when a situs of the alleged offense is the dwelling of his spouse." Although a husband has a possessory interest in the abode of his spouse and, therefore, may not be found guilty of simple trespass where no violence is involved because of his right to be there, he may not use violence to enforce his possessory interest. In other words, one spouse may not use violence to enter the abode of the other. We find that the case of *State* v. *Phillips* (1912), 85 Ohio St. 317, is distinguishable from the instant case. In *Phillips*, the wife was charged with the theft of money belonging to her husband, from a safe in their joint residence. The court distinguished the facts of *Phillips* "from many of the cases cited in argument, in which there appear schemes of fraud or violence," in finding that the wife could not be prosecuted for larceny. We find no error in the verdict, judgment and sentence on the charge of aggravated burglary. The first assignment of error is overruled.

Defendant's second assignment of error reads:

"The trial court erred in not entering judgment of acquittal on the aggravated burglary charge at the close of the state's case when defendant moved to dismiss all charges."

For the reasons stated in our ruling upon the first assignment of error, the second assignment of error is likewise overruled.

Defendant's third assignment of error states:

"The verdict with respect to the aggravated assault conviction is fatally defective and just [sic] be set aside."

Defendant complains that the third count of the indictment charges: "And the Grand Jurors aforesaid, upon their oath, do further find and present that Arnold Winbush on or about the 25th day of July, 1974, within the County of Franklin aforesaid, in violation of Section 2903.-11 R. C. did, knowingly, cause serious physical harm to Raymond Miller." At trial, the jury found as follows: "The defendant Arnold Winbush [is] guilty of aggravated assault as he stands charged in the indictment. * * *" It should be noted that the words "as he stands charged in the indictment" appear on the form the jury used and are not words written by the jurors. It is clear that the jury, in declining to find the defendant guilty of the more serious offense of felonious assault, chose to find the defendant guilty of the included offense of aggravated assault. The words "as he stands charged in the indictment" is a mistake in the language of the form used rather than a mistake of the jury and such words may be rejected as mere surplusage. Jury verdicts in criminal cases are to have reasonable constructions and are not to be declared void unless from necessity originating in doubt of their import or irresponsiveness to the issue submitted, or unless they show a manifest tendency to work injustice. Paragraph 2 of the syllabus in *State v. McNicol* (1944), 143 Ohio St. 39.

In this case, we find a mere technical error in the use of the jury verdict form which actually inures to the benefit of the defendant and causes defendant no prejudice. There is no prejudicial error here. The third assignment of error is overruled.

Defendant's fourth assignment of error relates:

"The finding of guilt on aggravated assault and voluntary manslaughter is against the manifest weight of the evidence hence must be set aside."

Defendant contends that a review of the entire record indicates that the defendant was legally insane at the time of the offense, requiring a finding that the jury lost its way because the defendant was psychotic and suffering from paranoid schizophrenia at the time of the offense

A psychologist, Mrs. Dorothy Turner, testified that

she was not sure if the defendant knew right from wrong at the time of the crime, but she felt that defendant was incapable of resisting the impulse to kill his wife and shoot Raymond Miller. A psychiatrist, Dr. Henry Luidens, agreed with Mrs. Turner, that defendant was a paranoid schizophrenic, but stated: "He had the knowledge of right from wrong and he had the ability to desist from doing the wrong, to abjure the wrong as that section says." He continued: "* * * I think he had the ability at that moment to resist doing it. * * * I said he did know right from wrong at the time. * * * Yes, that's a speculative point but that's the part that is kind of hard to say, how much rage and passion overcame him and how much control he had over that, that's pretty difficult, that's speculative."

In a criminal case, the defense of insanity is an affirmative defense. In order to find the jury's verdict against the manifest weight of the evidence upon that issue, sufficient evidence must be adduced so that the only reasonable conclusion therefrom is that disease, or some other defect of his mind had so impaired his reason that at the time of the criminal act with which he is charged he either did not know that such act was wrong, or he did not have the ability to refrain from the act. *State* v. *Staten* (1969), 18 Ohio St. 2d 13, paragraph 2 of the syllabus; *State* v. *Jackson* (1972), 32 Ohio St. 2d 203. Here, the state of the evidence was such that reasonable minds could reach different conclusions. The fourth assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

HOLMES and WHITESIDE, JJ., concur.