[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Harold D. Lilly appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of burglary, in violation of R.C. 2911.12(A)(2), and sentenced him accordingly.
On February 5, 1997, Lilly was indicted on nineteen counts of various offenses against his estranged wife, Jacqueline K. Lilly. Count nineteen of the indictment stated that, on or about January 26, 1997, Lilly had trespassed in Jacqueline Lilly's residence when she was present or likely to have been present, with the purpose of committing a criminal offense therein. Lilly entered a plea of not guilty on February 11, 1997 to all of the charges.
The state's evidence, presented at trial, established the following.
In August 1988, the Lillys were married. They separated in early 1996 and got back together in September of that year. In November, they again separated, and Jacqueline Lilly moved in with Lilly's sister, with whom she lived until January 1997. At that time, Jacqueline Lilly leased an apartment located at 1703 Villa South in West Carrollton, Montgomery County, Ohio. The Lillys' only child, Harold Dean Lilly, III ("DJ") lived with his mother at the apartment. Lilly moved in with his mother.
Jacqueline Lilly testified that on January 26, 1997, she and Lilly had spent the day together running errands and working on her apartment. She explained that, later that evening when Lilly had expressed his desire to have sex with her, she had asked him to leave and he then became angry, slapped her, and burned her with a cigarette. She testified that, to avoid further harm, she had engaged in several acts of sexual conduct with him and also had gone with him to "1470 West," a nightclub in Kettering, Ohio ("the nightclub"). Jacqueline Lilly testified that, after a security guard at the nightclub had become suspicious that something was wrong between her and Lilly and had asked to speak with her alone, Lilly had tried to pull her outside the nightclub. Jacqueline Lilly escaped from Lilly when Deanah Gipson, a manager at the nightclub, escorted her into an office and locked the door. Another nightclub employee called the police. Lilly attempted unsuccessfully to kick in the office door and then finally left the nightclub.
Officer Jeff Perkins of the Kettering Police Department testified that, at approximately 10:50 p.m., he had arrived at the nightclub and had observed Jacqueline Lilly acting "very upset" and "very nervous." He transported her to Miami Valley Hospital for medical treatment and for the collection of evidence regarding the alleged rapes by Lilly. Detectives Douglas Trimble and Mark Allison of the West Carrollton Police Department were dispatched to the hospital and there spoke with Jacqueline Lilly for approximately thirty to forty-five minutes. The detectives and Jacqueline Lilly then went to the police station where she made a lengthy written statement detailing the events that had just occurred between her and Lilly. She told them that she was afraid that Lilly would come back to harm her and that she wanted to go to a shelter. Between 7:30 and 8:00 a.m. on January 27, 1997, Detectives Trimble and Allison and Jacqueline Lilly left the police station and headed for her apartment to pick up some of her clothes and personal items to take to a shelter. Upon arriving at the apartment, they discovered that some of her clothes had been ripped, that the spark plugs in her car had been pulled, that her garage door opener and her purse were missing, and that a pair of Lilly's athletic shoes had appeared since he had been there earlier in the day. They left the apartment at approximately 8:30 a.m. and transported Jacqueline Lilly to a shelter.
Detective Allison testified that, on January 27, 1997, he contacted Lilly and informed him that a warrant had been issued for his arrest. The next day, he interviewed Lilly in the presence of Detective Trimble and another detective from the Kettering Police Department about the rape allegations. Both Detectives Allison and Trimble testified that Lilly had admitted to going back to Jacqueline Lilly's apartment after leaving the nightclub and entering the apartment through a door that he had left unlocked earlier in the day "so he could get back in." Detectives Allison and Trimble both stated that Lilly had admitted to stealing Jacqueline Lilly's purse, ripping her clothes, removing the spark plugs from her car, and hiding the garage door opener inside a box in the garage. According to Detective Allison, Lilly told him that he had been in the garage when the detectives and Jacqueline Lilly had discovered that her car would not start, that he had overheard part of their conversation, and that he had been inside the apartment from approximately 12:30 a.m. until noon on January 27th.
On June 13, 1997, the jury returned a verdict of guilty on the burglary charge and verdicts of not guilty on the other eighteen charges stated in the indictment. The trial court ordered a presentence investigation and released Lilly on a conditional own recognizance bond. On July 23, 1997, the trial court sentenced Lilly to a term of five years incarceration in the Ohio Department of Rehabilitations and Corrections.
On the same day that sentence was imposed, Lilly appealed his burglary conviction and sentence. He raises four assignments of error on appeal.
 I. THE COURT ERRED IN DETERMINING THAT APPELLANT HAD COMMITTED TRESPASS, AN ELEMENT NECESSARY UNDER OHIO REVISED CODE SECTION 2911.12 TO UPHOLD A CONVICTION OF BURGLARY.
Lilly contends that the state failed to prove the trespass element of a burglary offense because, pursuant to R.C. 3103.04, the marital relationship made his presence in Jacqueline Lilly's apartment lawful.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387, the Ohio Supreme Court explained the standard for reviewing a challenge to the sufficiency of evidence resulting in a conviction:
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. (Citations omitted.)
A concurring opinion in Thompkins clarified the role of appellate courts when faced with an insufficiency of the evidence challenge:
 A challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.
Id. at 390 (Cook, J., concurring).
Lilly was found guilty of having violated R.C. 2911.12(A)(2), which states:
 (A) No person, by force, stealth, or deception, shall do any of the following:
* * *
 (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;
R.C. 3103.04 provides, "Neither [husband nor wife] can be excluded from the other's dwelling, except upon a decree or order of injunction made by a court of competent jurisdiction." InState v. Herder (1979), 65 Ohio App.2d 70, 75-76, the court explained, "In light of the clear policy expression set forth in R.C. 3103.04, one spouse cannot be criminally liable for trespass in the dwelling of the other." See, also, State v. Brooks (1995),101 Ohio App.3d 260, 268; State v. Middleton (1993), 85 Ohio App.3d 403,408. The record in this case is devoid of evidence that a court of competent jurisdiction had issued a decree or order excluding Lilly from Jacqueline Lilly's apartment. Although the evidence suggested that Jacqueline Lilly had been the sole lessee of the apartment, the Lillys were married at the time of the incident giving rise to the burglary charge. In the absence of a court order, R.C. 3103.04 prevented Jacqueline Lilly from excluding her estranged husband from her apartment.
During oral argument, the state referred us to the case ofState v. Winbush (1975), 44 Ohio App.2d 256. In Winbush, the Franklin County Court of Appeals affirmed the aggravated burglary conviction of a defendant who had used a shotgun to break out the glass in a door of his estranged wife's residence and had shot and killed her and shot and wounded her paramour. Id. at 257. Regarding the R.C. 3103.04 issue, the Winbush court stated that, "[a]lthough a husband has a possessory interest in the abode of his spouse and, therefore, may not be found guilty of simple trespass where no violence is involved because of his right to be there, he may not use violence to enforce his possessory interest." Id. at 258. In this case, the testimony of Jacqueline Lilly, Detectives Allison and Trimble, and Officer Robert Hyatt, a West Carrollton police officer and evidence technician who had photographed Jacqueline Lilly's apartment, suggested that Lilly had entered the apartment through a door that he had left unlocked earlier in the day rather than by using violent force. Lilly's nonviolent entry into Jacqueline Lilly's apartment does not warrant a deviation from the R.C. 3103.04 rule as did the defendant's violent entry into his estranged wife's residence inWinbush. See Herder, 65 Ohio App.2d at 76-77. Because the trespass element of the burglary offense was not established, Lilly's conviction was based on insufficient evidence.
The state argues that Lilly waived his right to argue that R.C. 3103.04 applied to his case by failing to raise the issue at trial. The record does reflect that Lilly made a Crim.R. 29 motion for an acquittal on all of the counts both at the close of the state's case-in-chief and after his presentation of evidence, but it does not reflect that Lilly brought to the trial court's attention that R.C. 3103.04 had made his presence in Jacqueline Lilly's apartment lawful.
Generally, an appellate court is not required to consider "an error which was not called to the attention of the trial court at a time when such error could have been avoided or corrected by the trial court." State v. Joseph (1995), 73 Ohio St.3d 450, 455. Crim.R. 52(B), however, permits an appellate court to take notice of a plain error or defect affecting substantial rights although it was not brought to the attention of the trial court. State v.Campbell (1994), 69 Ohio St.3d 38, 41. In State v. Bock (1984),16 Ohio App.3d 146, 150, citing State v. Underwood (1983), 3 Ohio St.3d 12, the court explained:
 To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice.
Appellate courts should invoke the plain error rule "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, 97.
Convicting Lilly of a burglary offense, where, because of the operation of R.C. 3103.04, the trespass element of that offense had not been established, constituted a miscarriage of justice.Id. at 150. In our opinion, Lilly's burglary conviction upon insufficient evidence was plain error under Crim.R. 52(B). Id. at 55. Thus, we may take notice of that error and grant relief on appeal. Bock, 16 Ohio App.3d at 150.
We do not find persuassive the state's argument that, had it known of the R.C. 3103.04 issue prior to the conclusion of the trial, it could have asked the trial court for jury instructions on "the lesser included offenses of theft and vandalism." First, neither theft nor vandalism is a lesser included offense of burglary. State v. Deem (1988), 40 Ohio St.3d 205, 209. Second, it was up to the state to evaluate the evidence against Lilly at the outset and to decide which offenses to charge. For reasons best known to the state, it chose not to charge him with theft and vandalism. Lilly could have been charged and convicted of theft and vandalism, i.e., offenses committed within Jacqueline Lilly's apartment, even though he was privileged to be in her apartment.Herder, 65 Ohio App.2d at 76. Additionally, while we might be sympathetic with the state's public policy argument that enforcing R.C. 3103.04 in criminal cases charging estranged spouses with offenses involving trespass will discourage battered women from moving away from their abusive spouses, this argument must be made to the legislature.
Lilly's first assignment of error is sustained.
In light of our disposition of the first assignment of error, the other three assignments are moot, and the judgment of the trial court, as it pertained to Lilly's burglary conviction, will be reversed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
John J. Amarante
Thomas M. Kollin
Hon. Adele M. Riley