The STATE of Ohio, Appellant,

v.

O'NEAL, Appellee.*

[Cite as *State v. O'Neal* (1995), 103 Ohio App.3d 151.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C-940652.

Decided April 26, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 73 Ohio St.3d 1411, 651 N.E.2d 1309.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney, for appellant.

*Elizabeth E. Agar,* for appellee.

MARIANNA BROWN BETTMAN, Judge.

This is the state's appeal in an aggravated murder case in which the trial court dismissed all aggravated-burglary-related charges and specifications.

James O'Neal, defendant-appellee, was indicted on two counts of aggravated murder with death penalty and firearm specifications, one count of attempted aggravated murder, and one count of aggravated robbery. The victim of the

murder was O'Neal's wife.[1]  The murder occurred at the marital residence.[2]  Prior to trial, the defense moved to dismiss all aggravated-burglary-related charges and specifications on the ground that a husband cannot be guilty of trespass in his own home, and therefore the state could not prove an essential element of the offense.  The court, while expressing its reluctance, agreed with the defense and dismissed those charges.  The defendant stands accused of other death penalty specifications, notwithstanding the dismissal of the burglary-related charges.  The trial court stayed the proceedings pending the state's appeal pursuant to R.C. 2945.67.

We note at the outset that this matter came before the trial court on a Crim.R. 12(B) motion to dismiss.  Neither side presented any evidence.  The facts before the trial court were recited by counsel.  The pertinent information as set forth by counsel was that on December 7, 1993, the defendant had assaulted his wife.  As a result, she filed a domestic violence charge and an application for a temporary protective order the same day.  She also changed the locks and put her husband and his two children out of the house.  On December 11, O'Neal called his wife at work and threatened her.  Later that day, he returned to the marital residence.  Finding the locks changed, he kicked the door in, found his wife and allegedly shot her to death.  He was subsequently arrested.  On December 12, 1993, the day after the murder, the Hamilton County Municipal Court journalized a temporary protective order, restraining the defendant from entering the marital residence.

The only issue presented in this appeal is whether O'Neal could be convicted of any of the aggravated burglary charges and specifications.

The trial court held that a spouse cannot be excluded from the marital residence in the absence of a court order.  Further, the court found that no such order existed prior to the time of the murder.  In the absence of such an order, the trial court reasoned, a spouse cannot be a trespasser in his or her own house.  Because trespass is an element of burglary or aggravated burglary, the court held that the state could not prove an essential element of the offense and dismissed the aggravated burglary charges and specifications.  The state challenges this holding by the trial court in its sole assignment of error.  The state argues that when an abusive spouse has been charged with domestic violence and the victim spouse has assumed sole control of their formerly joint residence, the

---

1.  Both sides allege that the victim and O'Neal are husband and wife.  They had lived together without being married for several years.  In O'Neal's statement to the police, however, he stated that he "thinks" the parties were married by a "justice of the peace" in College Hill.  The date he gave was different from that which was stated by counsel.

2.  The record contains part of a Section 8 housing lease with HUD in which Carol Ann O'Neal is the named tenant and a later amendment adding the names of two stepchildren.

abusive spouse commits an aggravated burglary when he forces his way into the home with the intent to commit a felony.

■ Our initial determination in this matter is that the issue of whether the state can prove that the defendant trespassed on the premises is to be determined at trial, not by a motion to dismiss.[3] If, at the end of the state's case, the evidence is insufficient to prove that the defendant committed a trespass, then the court must dismiss the aggravated burglary charges and specifications pursuant to a Crim.R. 29 motion for acquittal. See *State v. Rollins* (May 27, 1988), Fulton App. No. F–88–1, unreported, 1988 WL 55597. However, we do not believe it would be helpful to the trial court to address only this procedural issue. Further guidance on the legal issue raised by the state is necessary to assist the trial court on remand.

The issue of whether a person can ever be guilty of trespassing on his or her own property is a thorny one, especially in today's climate of increased incidents of domestic violence. One line of cases, best exemplified by *State v. Herrin* (1982), 6 Ohio App.3d 68, 6 OBR 535, 453 N.E.2d 1104, and *State v. Winbush* (1975), 44 Ohio App.2d 256, 73 O.O.2d 257, 337 N.E.2d 639, holds that the use of force or violence to enforce a possessory interest turns an authorized entrance into a trespass. As appealing as this proposition may be, it is adding an element to the offense of burglary which is simply not in the statute. Criminal laws must be strictly construed against the state. R.C. 2901.04(A).

On the other hand, the cases of *State v. Middleton* (1993), 85 Ohio App.3d 403, 619 N.E.2d 1113, and *State v. Herder* (1979), 65 Ohio App.2d 70, 19 O.O.3d 47, 415 N.E.2d 1000, which the trial court found especially persuasive, rely strongly on R.C. 3103.04[4] as a clear statement of public policy that a spouse cannot be convicted of aggravated burglary committed at the other spouse's residence, even if they are living separate and apart, in the absence of a court order restricting the spouse from entering that dwelling. We disagree with our appellate colleagues' conclusion that R.C. 3103.04 is equally applicable to a criminal case and a civil case. Nor are we prepared to state that a *de facto*, as opposed to a *de jure*, separation of the parties gives them each permission to barge into the residence of the other. R.C. 3103.04 has its historical roots in Ohio's version of the Married Women's Act. For an excellent historical analysis of its use in a proper context,

---

3. The prosecutor argued below that it was premature to hear the Crim.R. 12(B) motion before any evidence had been presented.

4. The pertinent part of this statute states that "neither [husband nor wife] can be excluded from the other's dwelling, except upon a decree or order of injunction, made by a court of competent jurisdiction."

see *Slansky v. Slansky* (1973), 33 Ohio App.2d 127, 62 O.O.2d 235, 293 N.E.2d 302. We hold that it has no application to the case at bar.

The state argues that burglary statutes are designed to protect occupancy and possession, not title. We agree with this proposition, as did the court in *State v. Herder, supra*, 65 Ohio App.2d at 74, 19 O.O.3d at 50, 415 N.E.2d at 1003. However, in every one of the cases cited by the state from other jurisdictions, in which one spouse was found guilty of a trespass at the other's dwelling or the former marital residence, it is clear that the spouses had established separate residences. Simply throwing a spouse out of the house and changing the locks does not establish this. See *Davis v. State* (Tex.App.1990), 799 S.W.2d 398 (wife left marital abode and obtained an apartment in her own name); *White v. State* (Ala.Crim.App.1990), 587 So.2d 1218 (wife had filed for divorce, husband had vacated the house and had taken his belongings, wife had changed locks); *Parham v. State* (1989), 79 Md.App. 152, 556 A.2d 280 (wife was in sole possession of and in process of purchasing property, husband was living with his sister); *State v. Woods* (La.App.1988), 526 So.2d 443 (wife rented separate apartment solely for her own and the children's use); *Matthews v. Commonwealth* (Ky. 1986), 709 S.W.2d 414 (husband under a court order to stay away from the premises); *Knox v. Commonwealth* (1983), 225 Va. 504, 304 S.E.2d 4 (wife had left marital abode and moved with children into apartment); *State v. Schneider* (1983), 36 Wash.App. 237, 673 P.2d 200 (house occupied by tenant, wife did not live in house during time in question); *State v. Dively* (Ind.App.1982), 431 N.E.2d 540 (husband and wife separated, action for dissolution pending, wife had no interest in separate property of husband); *Cladd v. State* (Fla.1981), 398 So.2d 442 (husband and wife had been separated six months, husband had never lived in wife's separate apartment).

■■■ We hold that in the absence of a restraining order or an order granting one party exclusive possession of the marital residence, the question of whether one spouse has the sole possessory interest in the house depends on whether the evidence shows that *both* parties had made the decision to live in separate places. Both parties must have understood that the possessory interest of one was being relinquished, even if it was relinquished begrudgingly or reluctantly. In the absence of such a showing, there can be no finding of trespass and, hence, no aggravated burglary.

The only information in the record, which has not been presented in the form of evidentiary material, is that four days before she was killed Mrs. O'Neal threw her husband and his two children out of the house. She had the locks changed and was in the process of boxing up his clothes. The only information as to the defendant's whereabouts is that he told police that on the days that he was out of the house he was living on the streets.

After allowing the state to put on its evidence, the trial court must decide if there is sufficient evidence of a decision by both parties to establish separate residences. If the evidence is insufficient in this regard, the defendant may not be convicted of the aggravated-burglary-related charges and specifications.

The assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with law and this opinion.

*Judgment accordingly.*

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.