Appellant, Craig A. Ashworth, brings this appeal from a judgment of the Portage County Municipal Court, Ravenna Division, finding him guilty of assault and unlawful restraint following a bench trial. For the reasons adduced below, the judgment of the trial court is affirmed.
A review of the record on appeal indicates that on January 19, 1999, a complaint was filed in the Portage County Municipal Court, Ravenna Division, charging appellant with domestic violence upon his wife, Rhonda Ashworth ("Mrs. Ashworth") and his brother-in-law, Ronnie A. Winters ("Mr. Winters"), in violation of R.C. 2919.25, a misdemeanor of the first degree; and unlawful restraint upon Mr. Winters in violation of R.C.2905.03, a misdemeanor of the third degree. Upon a motion by appellee, the State of Ohio, the charge of domestic violence upon Mr. Winters was amended to assault, in violation of R.C. 2903.13, a misdemeanor of the first degree. Appellant entered a plea of not guilty to the charges. Thereafter, a temporary protection order was issued for Mr. Winters.
This matter came on for a bench trial on August 31, 1999. Appellee presented the testimony of Deputy Frank Lesho ("Deputy Lesho") and Mr. Winters, while appellant testified on his own behalf. Four photographs, which illustrated Mr. Winters' injuries, were also admitted into evidence by appellee.
The first witness for appellee was Deputy Lesho, who gave the following testimony regarding the events at issue. At approximately 4 a.m. on January 27, 1999, Deputy Lesho was dispatched to 3022 State Route 59, Lot B-41 in Portage County where appellant resided with his wife. Upon arriving at the scene, Deputy Lesho observed two victims, later identified as Mrs. Ashworth and Mr. Winters, standing outside of the residence in the roadway of the trailer park. Mrs. Ashworth was crying, and Mr. Winters had a bloody nose, which appeared to be swollen as well. Mrs. Ashworth advised the officer that she was residing in the trailer.
At the bench trial, Deputy Lesho testified that when he approached the trailer and knocked on the door, he was able to hear music and people talking inside. Once Deputy Lesho was able to enter the trailer, he observed between six to eight people therein. Unfortunately, the officer was unable to obtain statements from any of these individuals because, apparently, none of them observed anything.
Following the testimony of Deputy Lesho, Mr. Winters testified and summarized his recollection of the events that transpired on January 27, 1999. Mr. Winters stated that he had accompanied his sister to the marital residence so she could return a dog because pets were prohibited at her current residence. Upon approaching the residence, Mr. Winters heard a lot of noise and observed people moving around. His sister attempted to open the door to the trailer but it was locked. When no one responded to her knocking, Mr. Winters indicated that his sister kicked in the door of the residence. Mr. Winters entered the residence first, followed by his sister.
Upon entering, Mr. Winters observed four people in the living room and saw appellant coming out of the back bedroom or bathroom. At this time, appellant ordered his wife into the bedroom. Mr. Winters stated that he accompanied his sister to the bedroom because he feared for her safety.
Once in the bedroom, appellant shut the door, cornered his wife, asked her for a hug and a kiss, and pushed her against the wall. As this happened, Mr. Winters stated to appellant "Why don't you just leave my sister alone?" Appellant then turned his attention towards Mr. Winters, grabbed his arms and head-butted him, causing him to bleed from his nose. Mrs. Ashworth was able to get out of the room before this incident occurred. Afterwards, Mr. Winters pushed appellant away but appellant was able to poke Mr. Winters in the right eye. An unidentified man tried to separate appellant and Mr. Winters; however, appellant told the man to leave, and he did.
While still in the bedroom, Mr. Winters told appellant many times that he wanted to leave and tried a number of times to get out of the room. Despite these requests, appellant would not let Mr. Winters leave. Instead, appellant caused Mr. Winters to remain in the room by grabbing, pushing and stepping in front of him. When Mr. Winters was finally able to leave, he met up with his sister who was outside on the street calling the police.
On cross-examination, Mr. Winters indicated that the residence was his sister's house, but that she was not staying there currently because she and appellant were having marital problems. Mr. Winters also admitted that when appellant asked him to leave the premises, he failed to do so.
After the state rested, appellant took the stand and testified to an entirely different scenario of events. Prior to the altercation, appellant stated that his wife had vacated the premises and was no longer residing with him. Instead, his wife was living with her brother, Mr. Winters. Appellant testified that he was drawing water for a bath, and that while in the bedroom, a friend advised him that someone was "beating down the door." As appellant got to the living room, he claimed that Mr. Winters kicked open the door. Once inside the residence, Mr. Winters shoved appellant, and, as a result, appellant grabbed Mr. Winters, "put him out the door" and locked the door behind him. Appellant indicated Mr. Winters failed to depart from the residence even though he was asked to leave.
When the police arrived, appellant claimed that they did not want to hear his side of the story. Appellant denied grabbing or hitting his wife; denied restraining his brother-in-law from leaving the residence or poking him in the eye; and denied ever going into the bedroom with his wife and brother-in-law. Rather, according to appellant, the parties remained in the living room.
On cross-examination, appellant admitted that he did not know how Mr. Winters received a bloody nose. Appellant offered the explanation that because Mr. Winters had kicked open the door with such force, the door must have bounced off the sofa and struck Mr. Winters, thereby causing his bloody nose. We note that when appellant observed Mr. Winters enter the premises, he did not describe him as having a bloody nose.
At the conclusion of the bench trial, the court immediately rendered its decision on the record. The court found appellant not guilty on the charge of domestic violence in which the complaining witness, Mrs. Ashworth, did not appear to testify. As to the remaining charges, the trial court adjudicated appellant guilty of assault and unlawful restraint upon Mr. Winters. In rendering its decision, the trial court found Mr. Winters and Deputy Lesho to be credible witnesses.
After the finding of guilt, the trial court imposed a consecutive sentence of one hundred and eighty days for the charge of assault and sixty days for the charge of unlawful restraint. The court further ordered appellant to pay a fine of $200, plus court costs. The sentence was stayed pending this appeal on the condition that appellant have no contact with his wife or brother-in-law.
On October 26, 1999, appellant filed with this court a motion for leave to file a delayed appeal pursuant to App.R. 5(A). No brief or memorandum in opposition to appellant's motion had been filed by the state. Upon consideration and good cause shown, this court granted appellant's motion in a judgment entry dated December 1, 1999.
This matter is now before this court for review of the following assignment of error:
 "The verdict of the court in this case sub judice is against the manifest weight of the evidence and is contrary to law."
Within the sole assignment of error, appellant has set forth various sub-issues for this court's consideration.
When reviewing a claim that the judgment was against the manifest weight of the evidence, we must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387; State v. Duong (Dec. 11, 1998), Trumbull App. No. 98-T-0026, unreported, at 4, 1998 Ohio App. LEXIS 5999; State v.Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 16, 1994 Ohio App. LEXIS 5862. In order for an appellate court to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Thompkins at 387.
"The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J. concurring).
First, appellant maintains that the trial court erred when it concluded that Mrs. Ashworth and Mr. Winters were not trespassers. The crux of appellant's argument is that such an error precluded his defense of reasonable force in the ejectment of trespassers with respect to the assault charge. To support his contention, appellant relies on State v.O'Neal (1995), 103 Ohio App.3d 151, for the proposition that Mrs. Ashworth had relinquished her possessory interest in the marital residence.[1]
R.C. 3103.04, which is situated in the domestic relations chapter of the Revised Code, provides as follows:
 "Neither husband nor wife has any interest in the property of the other, except as mentioned in section 3103.03 of the Revised Code, the right to dower, and the right to remain in the mansion house after the death of either. Neither can be excluded from the other's dwelling, except upon a decree or order of injunction made by a court of competent jurisdiction." (Emphasis added.)
Although not proposed by appellant or appellee, it may be argued that a spouse cannot be held criminally liable for trespassing in the dwelling of the other spouse unless there exists a court order restricting the spouse from entering. However, in O'Neal at 407, and State v. Lilly (1999)87 Ohio St.3d 97, paragraph two of the syllabus, the Supreme Court of Ohio expressly held that R.C. 3103.04 is not applicable in criminal cases. Rather, R.C. 3103.04 "`was intended to address property ownership rights of married person, matters of a civil nature. Privileges of a husband and wife with respect to the property of the other were not meant to be enforced criminally and do not affect criminal liabilities.'"O'Neal at 407, quoting Lilly at 102. Thus, "in Ohio, one can commit atrespass * * * against property of which one is the legal owner ifanother has control or custody of that property." (Emphasis added.)Lilly at 102; See, also, O'Neal at 408.
This case presents an issue of first impression in this court, to wit: whether appellant had "control or custody" of the marital home such that his wife may be considered to be a trespasser.
In O'Neal, the Supreme Court of Ohio concluded the evidence established that, at the time the husband broke into the former martial residence and murdered his wife, the wife was in sole custody of and control over the residence because: (1) the wife was the lessee under the lease agreement for the home; (2) four days before the wife was killed, the husband was no longer living in the marital home but was living somewhere else; (3) the wife had filed a motion for a temporary protection order against the husband; and (4) the husband shattered the glass in the front door to gain access into the home.[2] O'Neal at 408.
The case at bar, however, is distinguishable from O'Neal in several ways. First, there was no evidence on the record to indicate what interest each spouse had in the marital home at the time of the offenses. Second, prior to the altercation, no motion was filed by appellant against his wife to either restrain or restrict her from entering the marital residence. Third, prior to the altercation, Mrs. Ashworth had not been residing with appellant for approximately a week and a half to two weeks.
Upon consideration, we determine that there was some evidence in the record to show that appellant did not have an exclusive right to custody or control of the marital property. Further, the trial court found Mrs. Ashworth had a legitimate reason to seek admittance as she was returning a dog, and as a resident, she had the right to have her brother accompany her.
Even if the trial court incorrectly characterized Mrs. Ashworth as a non-trespasser when she entered the house, she did not remain as one. Certainly, the trial court did not have the benefit of Lilly or O'Neal to guide its decision.[3]
At trial, Mr. Winters testified that appellant told his wife to get into the bedroom. If believed, this ratified Mrs. Ashworth's presence as a non-trespasser, regardless of how she may have started out. While appellant denied this, the trial court found Mr. Winters' testimony to be credible. As the reviewing court, we must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
By requesting that his wife go into the bedroom of the marital residence, appellant changed her status as a trespasser to that of a non-trespasser. Sweet v. Clare-Mar Camp, Inc. (1987), 38 Ohio App.3d 6, paragraph five of the syllabus (holding that the status of a person may change while he or she remains on the premises). In other words, even if Mrs. Ashworth had lost her rights as the possessor-wife, Mrs. Ashworth regained her rights to the marital home. As such, she was entitled to have her brother remain on the property. Simply stated, either Mrs. Ashworth never lost her possessor status, or if she did, she regained it by the time of the actual altercation.
In summation, the trial court, as the trier of fact, did not lose its way or create such a manifest miscarriage of justice when it found that the wife had a right to be present on the premises with her brother.[4]
The second issue presented by appellant within his single assignment of error is whether the trial court made factual findings and determinations of credibility which were contradicted by the evidence. Specifically, appellant points to the following statement of the trial court:
 "I don't know who kicked in the door. Mr. Winters said that Rhonda [Mrs. Ashworth] kicked in the door. Mr. Ashworth [appellant] says Ronnie [Mr. Winters] kicked in the door, but he also says he was taking a bath or preparing to take a bath when this happened, so I don't know how he knows who kicked the door."
Appellant claims his testimony contradicts the trial court's above finding because he testified that he was drawing water to take a bath when a guest advised him that someone was "beating down the door." After leaving the bathroom, appellant walked into the living room and saw Mr. Winters kick open the door.
At trial on direct examination appellant provided the following testimony:
"Q. [by defense counsel] Can you tell the Court what happened?"
 "A. Well, it was about a quarter to four in the morning, and I received a phone call from Ronnie saying he wanted to bring the dog back. I told him no, and I hung up the phone. After that conversation, I went into the bathroom to draw some water for a bath. I had some friends over. They were going to stay the night. Well, my bath water was halfway full, and one of my friends came to the bedroom to say, `Someone's beating down the door.' I said, `That don't happen down here.' He said, `Someone's beating down the door.' As I go to the living, low and behold Ronnie kicks the door open saying, `How could you do this to my sister?' Meanwhile, Rhonda comes in behind him and starts cussing out everybody all my friends and everything."
It is evident from the record that there was conflicting testimony with respect to who kicked down the front door to the residence. For instance, Mr. Winters testified that his sister kicked down the door while appellant testified that Mr. Winters was the actor. Appellant further claimed to have seen Mr. Winters kick the front door. In contrast, Mr. Winters testified that after entering the residence through the front door, appellant was not in the living room; rather, he was coming out of the bedroom or bathroom.
Under these circumstances, it was reasonable for the trial court to conclude that it was unable to determine who, in fact, kicked in the front door. As the reviewing court, we accord due deference to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. DeHass at paragraph one of the syllabus. Thus, we cannot conclude that the trial court made factual findings and determinations of credibility which were contradicted or unsupported by the record.
In the third issue raised within his sole assignment of error, appellant contends that the trial court made the unreasonable inference from circumstantial evidence that appellant could have asked his friends to help him escort Mr. Winters from the residence.
In general, "an inference cannot be predicated solely upon another inference which is unsupported by facts in evidence." State v. Deel
(Sept. 30, 1986), Lake App. No. 11-062, unreported, at 18, 1986 WL 11203, citing Hurt v. Charles J. Rogers Transp. Co. (1955),164 Ohio St. 329.
Contrary to defendant's assertion that his conviction rests on a mere "inference" from circumstantial evidence, the record supports the inference that appellant could have asked a guest to help him escort Mr. Winters from the residence. Specifically, there was testimony from Deputy Lesho and Mr. Winters, which was found to be credible by the trial court, that the trailer had been occupied with six to eight persons. Further, Mr. Winters provided testimony that an unidentified man attempted to separate him and appellant. Accordingly, the trial court's inference was both reasonable and supported by the record.
The fourth issue presented by appellant concerns whether the trial court improperly transferred the burden of proof to appellant when it found that although appellant had guests at his residence, they failed to tell Deputy Lesho what happened.
Upon consideration, we agree that this was a curious state of affairs. However, this was a bench trial, not a jury trial. While the remark implied some sarcasm on the part of the court, we fail to see an attempt to transfer the burden of proof to appellant.
In the last issue raised by appellant within his single assignment of error, he suggests that there is evidence on the record which impeaches the trial court's decision. In particular, appellant points to the following evidence: the admission made by Mr. Winters that appellant asked him to leave, yet he refused to do so; the trial court's conclusion that Mrs. Ashworth had a reason to bring her brother along notwithstanding the absence of any evidence to suggest that appellant had been abusive or threatened her with violence; the admission by Mr. Winters that his statement to the police failed to mention that he and his sister had gone into appellant's bedroom;[5] and the implausibility of Mrs. Ashworth going into the bedroom with appellant upon his command if she was afraid of him.
As mentioned earlier, if Mrs. Ashworth initially started out as a trespasser to the marital home, her status changed when appellant ordered her into the bedroom. As a result, Mrs. Ashworth regained her rights as a possessor to the martial home and was entitled to have her brother present in the residence over appellant's objection.
As for Mr. Winters' failure to mention in his statement to the police that he and his sister went into the bedroom, Mr. Winters admitted on re-direct examination that he did not put all the details surrounding the altercation in his statement because he was nervous, shaking, and was unable to see out of one eye. He stated that "[this was] the first time anything like this ever happened to [him]." Furthermore, Mr. Winters' statement to the police mentioned that (1) appellant pushed and grabbed Mrs. Ashworth; (2) appellant head-butted and poked him in the eye; and (3) appellant would not let him leave.
Finally, with respect to whether Mrs. Ashworth went into the bedroom with appellant after he told her to do so, Mr. Winters testified that this, indeed, occurred while appellant denied ever entering the bedroom with his wife. Again, the trial court found Mr. Winter's testimony credible, and as an appellate court, we must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. DeHass, paragraph one of the syllabus.
Based on the foregoing analysis, appellant's sole assignment of error, including all five sub-issues, is without merit. The judgment of the trial court is, hereby, affirmed.
 ______________________ JUDGE JUDITH A. CHRISTLEY
O'NEILL, P.J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.
[1] This court will limit its analysis to the use of reasonable force in the ejectment of trespassers as a defense to assault, not the unlawful restraint. Further, we note that the decision of the First Appellate District in O'Neal, 103 Ohio App.3d 151, was affirmed by the Supreme Court of Ohio in State v. O'Neal (2000), 87 Ohio St.3d 402. Thus, the more precise citation should be to the decision rendered by the Supreme Court.
[2] The defendant in O'Neal was convicted of aggravated burglary for which trespass is an essential element to such a crime.
[3] O'Neal was decided on January 5, 2000 while Lilly was decided on October 20, 1999.
[4] If this court were to determine that Mrs. Ashworth and Mr. Winters were trespassers, we would be required to remand this case to the trial court for it to consider appellant's defense of reasonable force to eject a trespasser from his property as to the assault charge. State v.Preston (Sept. 20, 1999), Butler App. No. CA 99-02-028, unreported, at 2, 1999 WL 740420, citing Williams v. Pressman App. (1953), 470 Ohio Law Abs. 470, 472. It is well-settled that a property owner has the right to use reasonable force to eject a trespasser who refuses to depart from the property after receiving notice or warning. State v. Childers (1938),133 Ohio St. 508, 516; State v. Fonce (Dec. 2, 1994), Trumbull App. No. 94-T-5041, unreported, at 2, 1994 WL 780878. But what constitutes reasonable force is a question for the trier of fact. Childers at 515. However, in the instant matter, it is unclear whether appellant's use of force was applied for the specific purpose of ejectment. Nonetheless, we are persuaded that the record provides enough evidence for the trier of fact to conclude that appellant's use of force, to-wit: head-butting Mr. Winters, was not reasonable.
[5] A portion of Mr. Winters' statement to the police describing the incident was read into evidence by Mr. Winters on cross-examination.