STATE of Tennessee, Appellee,

v.

**Keith L. DRINKARD, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

March 8, 1995.

Permission to Appeal Denied by Supreme Court July 3, 1995.

A.C. Wharton, Jr., Shelby Co. Public Defender, Walker Gwinn, Assistant Public Defender, Memphis, Sherrye J. Brown, Assistant Public Defender, Memphis, for Appellant.

Charles W. Burson, Attorney General & Reporter, Rebecca L. Gundt, Assistant Attorney General, Criminal Justice Division, Nashville, John W. Pierotti, District Attorney General, James C. Beasley, Jr., Asst. Dist. Attorney General, Memphis, for Appellee.

## OPINION

SUMMERS, Judge.

The appellant, Keith L. Drinkard, was convicted by a jury of aggravated rape and aggravated robbery. Drinkard now appeals the judgment affirming the verdict, presenting four issues for our review: (1) whether the trial court erred by failing to suppress pre-trial and in-court identifications of the appellant by the victim; (2) whether the trial court erred by admitting into evidence the circumstances surrounding the appellant's arrest; (3) whether the trial court erred by excluding evidence that the appellant had signed a consent form to take blood and hair samples; and (4) whether the evidence was sufficient to sustain the appellant's convictions for aggravated rape and aggravated robbery. Having considered each of these issues, we affirm the judgment of the trial court.

## FACTS

Since the appellant has raised primarily evidentiary questions, we find it appropriate to recite the facts of the case.

The victim was a graduate student living in the Goodman Dormitory of the University of Tennessee at Memphis. The parking lot adjacent to this dormitory is surrounded by a five (5) foot cement wall. A chain-link fence which is approximately nine (9) feet tall and topped by three (3) strands of barbed wire runs along the top of the wall. The area is well lit and patrolled by security guards.

At approximately 10:30 one evening the victim returned to the Goodman parking lot after studying with her tutor. She parked

her car near a light and began walking toward her apartment. She was only a few feet from her car when she noticed that the appellant was walking in her direction. The appellant said hello to her, and she spoke to him in return. The appellant was the only other person in the parking lot, but the victim indicated that she did not feel threatened by him at this point. She then remembered that she had left some study materials in her car and she went back for them.

When she reached her car and leaned over the driver's seat to retrieve her papers, the appellant grabbed her from behind placing his hand over her mouth and a sharp object to her neck. He demanded her money and jewelry, and she complied. He then pushed her down onto the driver's seat and took off her shorts and underwear. He inserted his fingers into her vagina, and penetrated her twice with his penis. Unable to attain a full erection, the appellant shoved the victim into the passenger seat of the car and warned her that he would kill her if she "tried anything funny." The appellant unsuccessfully attempted to start the car. He forced the victim to try to start the car from the passenger seat. When the car moved a bit and then stalled, the victim jumped from the car and ran to her dormitory.

At approximately the time of the attack, security guards from neighboring Shelby State Community College saw a man matching the appellant's description standing inside the fence in the Goodman parking lot with his hands extended as though he was preparing to scale the fence. When the officers shined the lights of their patrol car on the man, he ran toward the UT campus. Efforts by the Shelby State officers and by UT security to apprehend this man were unsuccessful.

Nine days later, an officer of the UT Police Department saw the appellant scale the fence and enter the secured parking lot at the Goodman Dormitory. When the officer confronted the appellant, the appellant claimed that he had been taking a short cut to another parking lot which he had been hired to clean. The officer knew this to be a lie, because the UT grounds crew cleans the lot in question; and the appellant was not a UT employee. The officer then arrested the appellant, handcuffed him, and placed him in the back of a squad car.

The appellant was in the back of the squad car parked in the entrance of the Goodman parking lot when the rape victim returned from an evening out with her fiance. Other officers and police vehicles had arrived on the scene, and there was only room for one vehicle to pass between the police vehicles. The victim's fiance stopped the car and the victim rolled down the window to inquire if anyone had been hurt. A police officer told the victim that they had apprehended someone in the parking lot and that she might want to "take a look at him." The victim instructed her fiance to slow down as they passed the squad car. She then recognized the appellant as the man who had attacked and raped her. She identified the appellant to the police and they later took her statement.

## ISSUES

The appellant maintains that the identification in the parking lot should have been suppressed as the result of an impermissibly suggestive showup. In a related issue, he argues that an in-court identification by the victim should be suppressed because it was tainted by the suggestiveness of the pre-trial showup. Finally, the appellant contends that without the improper pre-trial and in-court identifications by the victim, the evidence is legally insufficient to sustain his convictions. Because these three issues all turn on our resolution of the pre-trial identification issue, we will consider them together.

■ Tennessee law has clearly recognized that any identification procedure initiated or designed by police which is inherently suggestive violates the accused's due process rights. *E.g. State v. Thomas,* 780 S.W.2d 379 (Tenn.Crim.App.1989); *State v. Beal,* 614 S.W.2d 77 (Tenn.Crim.App.1981); *Sloan v. State,* 584 S.W.2d 461 (Tenn.Crim. App.1978). It is also well settled, however, that an observation of a defendant by a victim cannot be characterized as a showup unless it is arranged by the police. *State v. Dixon,* 656 S.W.2d 49, 51 (Tenn.Crim.App.

1983). An inadvertent or accidental meeting between the victim and the defendant involves no abuse of the identification process. *State v. Burns,* 777 S.W.2d 355, 358 (Tenn. Crim.App.1989).

■ The trial court found that the pre-trial identification was based on a "chance observation by the victim" and was not the product of an impermissibly suggestive show-up. There was no evidence that the police had staged the incident or that they had brought the appellant there for the purpose of conducting a showup. The appellant was there voluntarily and was in fact apprehended there in the process of committing another offense, to wit, criminal trespass. The victim had no choice under these circumstances but to pass within a few feet of the squad car where the appellant was handcuffed. That one officer suggested to the victim that she might "take a look" as she passed by does not remove the incident from the realm of happenstance.

As the trial court correctly pointed out, the officers on the scene had no affirmative duty to prevent the victim from entering her own parking lot or to spirit the appellant away so that the victim would be unable to view him. We find the appellant's first issue concerning the pre-trial identification to be without merit, and accordingly, we also find that the issue relating to the in-court identification and the sufficiency of the evidence issue are meritless.

■ The appellant also contends that the trial court erred by admitting evidence of another crime contrary to Rule 404(b) of the Tennessee Rules of Evidence. Rule 404(b) provides:

(b) Other Crimes, Wrongs, or Acts.— Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct con-

forming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

T.R.E. 404(b).

■ Rule 404(b) was drafted in accordance with the Supreme Court's ruling in *State v. Parton,* 694 S.W.2d 299 (Tenn.1985). The rule establishes procedures which the trial court must use in deciding whether evidence should be admitted or excluded. Only in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. Such exceptional cases include identity, intent, motive, opportunity, or rebuttal of mistake or accident. Ultimately, the trial court must balance the probative value of the evidence against any unfair prejudice to the appellant. If the unfair prejudice outweighs the probative value or is dangerously close to tipping the scales, the court must exclude the evidence despite its relevance to some material issue other than character.

The trial court conducted the required hearing and concluded that the appellant's arrest and the circumstances surrounding it were admissible to show why the appellant was confined in a squad car in the parking lot of the victim's dormitory. The evidence was not admitted to show a character trait of the appellant or to prove conduct in conformity with a character trait. *See* T.R.E. 404(b)(2). To reduce the prejudicial effect of the admitted evidence, the trial court did not allow the state to refer to the appellant's possession of two knives at the time of his arrest.

■ The Tennessee Rules of Evidence provide that admission or exclusion of evidence is not a basis for error unless the ruling affects a substantial right of the party. T.R.E. 103(a). We find that the trial court correctly allowed into evidence the circumstances of the appellant's arrest. We further find that even if the trial court's decision was erroneous, no substantial right of the appellant was affected thereby. In light of the overwhelming evidence of the appellant's

guilt, any error in the admission of this evidence was harmless. *State v. Shelley*, 628 S.W.2d 436, 438 (Tenn.Crim.App.1981); T.R.A.P. 36(b). This issue is without merit.

■ Finally, the appellant maintains that it was error for the trial court to exclude evidence that he signed a form indicating his consent to the taking of blood or hair samples. The trial court found and we agree that the appellant's consent to the taking of hair and blood samples is irrelevant where no samples were in fact taken. This evidence is inadmissible because it has no "tendency to make the existence of any fact that is of consequence more probable or less probable than it would be without the evidence." T.R.E. 401, 402. Furthermore, in light of the overwhelming evidence of the appellant's guilt, any error in the exclusion of this evidence was harmless. *State v. Shelley*, 628 S.W.2d 436, 438 (Tenn.Crim.App.1981); T.R.A.P. 36(b). This issue is therefore without merit.

### CONCLUSION

Having thoroughly considered each of the issues presented for our review we find them to be without merit. The judgment of the trial court is therefore:

**AFFIRMED.**

PEAY and TIPTON, JJ., concur.