# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 18, 2001

## STATE OF TENNESSEE v. ROBERT L. DREW

### Direct Appeal from the Criminal Court for Davidson County
### No. 95-D-2559      Steve R. Dozier, Judge

---

### No. M2000-01853-CCA-R3-CD - Filed September 7, 2001

The defendant appeals his conviction of theft of property valued at $1,000 or more, but under $10,000.  He contends that the trial court erred in denying his motion to suppress a showup identification of him at the crime scene.  He further contends that the evidence was insufficient to support his conviction and that the trial court erred by instructing the jury on flight.  After review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Robert L. Drew.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Kymberly L. A. Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Robert L. Drew, was indicted by the Davidson County Grand Jury for theft of property valued at $1,000 or more, but under $10,000.  After a jury trial, he was found guilty and sentenced to twelve (12) years in the Department of Correction as a career offender, to run consecutive to several Shelby County convictions and a conviction for felony escape, which occurred on the same date of the instant offense.  His appeal is properly before this court and he contends that the trial court erred in denying his motion to suppress a showup identification at the scene of the crime, as it tainted the eventual in-court identifications.  He also contends that the evidence was insufficient to support his conviction and that the trial court erred in instructing the jury on flight.  After review, we affirm the judgment of the trial court.

**Facts**

On June 16, 1995, Linda Capley was working at Lavert's Market in West Nashville. Earlier in the day she had been in the liquor store that was attached to the market, and while in the liquor store, the defendant came in, talked with her for a few minutes, and purchased a bottle of wine. Later in the day, she was waiting on a woman in the market and the defendant came in and stood behind the woman in line. She was cashing several checks and had just opened a new bundle of twenty-dollar bills, which contained $2,000, and had placed them in the register.

While waiting on a customer, Ms. Capley opened the cash register drawer and the defendant reached over the counter and took a hand full of twenty-dollar bills out of the register. At that moment, Ms. Capley screamed, "He got my money," and she ran after him as he fled from the market. Mary Sigler, the owner of the market, was on the telephone when the defendant came into the store. She did not see the defendant take the money out of the register; however, she saw the money in his hand as he was drawing his hand back from the register. Two other men who worked near the market witnessed the defendant running from the store with money in his hands and chased him to a nearby field that surrounded an abandoned grain silo.

Officer Jeff Burnette was dispatched to Lavert's Market after a call came in reporting the incident. He was instructed by an eyewitness who saw the defendant run from the store with the money in his hands that he ran into the field near the grain silo. Ms. Capley described the perpetrator as a black male wearing a white-colored shirt and blue jeans. Ms. Sigler described the perpetrator as wearing a light-colored shirt and dark pants. She said that he had a very identifiable face with a long nose, long face, and normal size lips. She said that she could see the defendant very well in the market and that he had stood in line for at least a couple of minutes, so she had a good opportunity to look at him.

After searching the area near the silo for nearly two hours, Officer Burnette located the defendant hiding near a grain bin. The defendant was wearing a white shirt and dark pants and had $260 in twenty-dollar bills in his left front pocket. After arresting the defendant, Officer Burnette returned to the market and asked each witness to walk by the police car and determine if they could identify the man in the car. Each witness individually identified the defendant as the perpetrator.

Although the defendant had only $260 in twenty-dollar bills in his possession when he was arrested, Mary Sigler testified that based on the amount of money that had been put in the register that day, roughly $2,000 was missing. Furthermore, Linda Capley testified that she had just put a bundle of twenty-dollar bills in the register, which contained $2,000. The only money that the defendant took from the register was twenty-dollar bills.

Prior to trial, the defendant moved to suppress the showup identification of him by the witnesses at the market as being impermissibly suggestive and as tainting any subsequent in-court identifications. Both Mary Sigler and Linda Capley testified at the hearing. Ms. Sigler testified that she was on the phone near the check-out counter when the defendant came into the store. She

testified that he stood in line for several minutes behind a woman who was placing a money order. Ms. Capley testified that she was working the cash register and helping a woman with her purchases when the defendant reached over the counter and grabbed the money out of the register. She then screamed, "He got my money," and ran after him as he fled the market.

Ms. Sigler testified that she did not see the defendant grab the money out of the register, but she saw the money in his hand as he was drawing his hand back from the register. She described him as a black male wearing a light-colored shirt and dark pants. She said that he had a very identifiable face with a long nose, long face, and normal size lips. Ms. Capley also described the perpetrator as a black male wearing a white-colored shirt and blue jeans.

Officer Jeff Burnette testified that the description given to him of the perpetrator was a black male, about six feet tall, wearing a white shirt and dark pants. An eyewitness instructed the officer that they saw the defendant run from the store into a nearby field with money in his hands. After a search of the nearby field and grain bin, the officer located the defendant, who was dressed in a white shirt and dark pants. The defendant had $260 in twenty-dollar bills in his left front pocket. Officer Burnette then arrested the defendant.

Officer Burnette returned to the market with the defendant and asked each witness to walk by the police car and determine if they could identify the man in the car. Five witnesses, including Mary Sigler and Linda Capley, each positively identified the defendant as the perpetrator. At the conclusion of the hearing, the trial judge, relying upon the case of Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972), denied the defendant's motion to suppress the showup identification.

### Identification Procedure

First, the defendant contends that the trial court erred in not suppressing the showup identification of him and that such impermissibly suggestive identification tainted any in-court identifications. In reviewing suppression issues, we will affirm the trial court's findings of fact unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Furthermore, in reviewing a trial court's ruling on a motion to suppress, this court may consider proof adduced at both the suppression hearing and at trial. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

Any identification process that is so impermissibly suggestive "as to give rise to a very substantial likelihood of irreparable misidentification" violates due process. Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968). A showup is a type of identification of a defendant that is inherently suggestive. See State v. Drinkard, 909 S.W.2d 13, 15 (Tenn. Crim. App. 1995). The use of showups to establish the identification of a person suspected of committing a criminal offense has been repeatedly condemned unless (1) there are imperative circumstances necessitating the showup, or (2) the showup is part of an on-the-scene

investigatory procedure shortly after the commission of the crime. See State v. Thomas, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989).

Although a showup may be suggestive, it may satisfy due process as reliable and admissible if the totality of the circumstances so warrant. See State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). The five factors to consider when evaluating the propriety of an identification process are: (1) the opportunity the witness had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty of the witness at the confrontation; and (5) the time between the crime and the confrontation. See Brown, 795 S.W.2d at 694 (citing Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972)).

In this case, the showup identification of the defendant was inherently suggestive, particularly because the defendant was confined to the back of the police car. However, we must determine whether the showup was unnecessarily or impermissibly suggestive. We first note that the defendant was apprehended only two hours after the crime occurred. The police apprehended the defendant a short distance from the scene of the crime and were still conducting an on-the-scene investigation of the crime. Therefore, this particular showup may be permissible if, considering the totality of the circumstances, it is reliable so as to satisfy due process. See Brown, 795 S.W.2d at 694.

The evidence at the suppression hearing showed that both Mary Sigler and Linda Capley had ample opportunity to view the defendant. Not only did each of the eyewitnesses clearly see the defendant standing in line and taking money from the cash register, but Ms. Capley had even had a conversation with the defendant earlier in the day at the liquor store. The two eyewitnesses each gave the police a description of the perpetrator as being a black male wearing a light-colored shirt with dark pants. Ms. Sigler even described the perpetrator as having a very identifiable long face with a long nose and normal size lips. When the witnesses were confronted with the defendant, each of the five positively identified the defendant as the perpetrator. When questioned at the suppression hearing and at trial about the certainty of their identification of the defendant, each was very certain that the defendant was the perpetrator. Finally, the confrontation wherein the witnesses identified the defendant was only a couple of hours after the crime occurred. Given the totality of the circumstances of this showup and eventual in-court identification of the defendant as the perpetrator, this identification procedure clearly satisfied due process. See Brown, 795 S.W.2d at 694. Therefore, the trial court properly denied the defendant's motion to suppress.

### Sufficiency of Evidence

The defendant was indicted for and ultimately found guilty of violating Tennessee Code Annotated section 39-14-103, theft of property valued at $1,000 or more, but less than $10,000, a Class D felony. He contends that the evidence at trial was insufficient to support his conviction. His contention is two-fold: (1) Because the prior showup identification of the defendant should have been suppressed and any subsequent in-court identifications were tainted by the impermissibly

suggestive showup, there was insufficient evidence to identify the defendant as the perpetrator of the theft; and (2) that the evidence was insufficient to support a conviction for theft in the amount of $1,000 or more.

We review challenges to sufficiency of the evidence according to well-settled principles. A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Tuggle, 639 S.W.2d at 914. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id.

Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). In concluding our evaluation of the convicting evidence, this court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996).

As previously discussed in this opinion, we reject the defendant's contention that the showup identification was impermissibly suggestive and thus should have been suppressed. The identification evidence at trial consisted of two eyewitnesses who worked at the store where the theft occurred. These two eyewitnesses positively identified the defendant as the perpetrator of the theft. At trial, they described how they saw the defendant pulling his hand away from the cash register with a hand full of bills. In addition, one of the witnesses then chased the defendant out of the store as he fled to a nearby field. This evidence was clearly sufficient to identify the defendant as the perpetrator of this crime.

Next, the defendant contends that insufficient evidence exists to support a conviction for theft of property over $1,000. The evidence at trial showed that the defendant reached over the counter and removed a hand full of twenty-dollar bills from the cash register. Mary Sigler testified that based on the amount of money that had been put in the register that day, roughly $2,000 was missing. Furthermore, Linda Capley testified that she had just put a bundle of twenty-dollar bills in the register, which contained $2,000. The only money taken from the register was twenty-dollar bills. When the defendant was arrested, he had $260 in his left front pocket, all twenty-dollar bills. This evidence was clearly sufficient for a jury to conclude that the amount of money that the defendant took from the cash register was over $1,000. This issue is without merit.

### Jury Instruction on Flight

The defendant contends that the trial court erred by giving an instruction to the jury on flight. Initially, we note that the defendant has failed to include the jury instructions in the record for our review. The burden is on the defendant to provide a complete record for our review. See Tenn. R. App. P. 24. Normally, an issue is waived if the defendant fails to effectuate a complete record adequate for us to review the issue. See State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). However, the transcript in this case clearly indicates that the trial court determined that such an instruction on flight was warranted. Further, the trial court, in denying the defendant's motion for a new trial, stated, "In terms of the flight instruction, I think the case law is clear, that the instruction should have been given." The record clearly indicates that a flight instruction was given to the jury. Because the defendant only contends that an instruction on flight was inappropriate, and not that the particular substance of the instruction was error, for purposes of review, we will examine the Tennessee Pattern Jury Instruction on flight:

> The flight of a person accused of a crime is a circumstance which, when considered with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.
>
> The law makes no precise distinction as to the manner or method of flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.
>
> If the flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case.
>
> Whether there was flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.

T. P. I. - Crim. 42.18.

In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction. Sufficient evidence supporting such instruction requires "'both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community.'" State v. Burns, 979 S.W.2d 276, 289 (Tenn. 1998) (quoting State v. Payton, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989)).

Here, the defendant both ran from the crime scene, while being chased by one of the witnesses, and hid out in some overgrown weeds near a grain silo for nearly two (2) hours before being apprehended by police. This evidence clearly supported the trial court's instruction on flight. The defendant contends, however, that the trial court should not have instructed the jury on flight because the trial court knew he was on escape status, and, thus, explaining that status to the jury would have an extremely prejudicial effect on him because it would have revealed his prior robbery and theft convictions. The State responds that the record does not indicate that the defendant was an escapee. However, the pre-sentence report indicates that the defendant was also charged with felony escape on June 16, 1995, the same date of the offense and the charge in the instant case. The defendant was convicted on the escape charge on June 8, 1998, approximately two months prior to the trial in this matter. Further, the defendant's current theft conviction was ordered to run consecutive to his escape conviction. We disagree with the State's contention that the defendant was not an escapee. Therefore, we will determine whether a defendant's escape status or prior convictions for robbery and theft preclude a trial court from instructing the jury on flight.

Essentially, the defendant's contention is that he was denied a fair trial because, in order for him to explain why he was hiding from the authorities, the jury would be informed of his prior robbery and theft convictions. Although a defendant is guaranteed the right to a fair trial, the State, as the representative of the people, is also entitled to a fair trial. See, e.g., United States v. Ford, 830 F.2d 596, 603 (6th Cir. 1987) (Krupansky, J., concurring); see also State v. Carruthers, 35 S.W.3d 516, 563 (Tenn. 2000) (discussing the State's interest in a fair trial). When a defendant is charged with a crime, the State has no control over the defendant's status or prior record and must take its defendants as it finds them. Here, the defendant placed himself in the position of being a felon previously convicted of several robberies and thefts. Furthermore, he placed himself in the position of being an escaped felon from the Department of Correction. The State should not be deprived of its interests in a fair trial by not having the jury instructed on all appropriate instructions as a result of the defendant being an escapee. Therefore, we hold that the defendant was not deprived of his right to a fair trial as a result of his own misconduct. The trial court properly instructed the jury on flight.

### Conclusion

After a thorough review of the record before us, we hold that the trial court properly denied the defendant's motion to suppress the showup identification of the defendant as the perpetrator. We further hold that sufficient evidence exists to support the defendant's conviction and that the trial court properly instructed the jury on flight. We affirm the judgment of the trial court in all respects.

JOHN EVERETT WILLIAMS, JUDGE