IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 6, 2012

**STATE OF TENNESSEE v. TERRANCE DIXON**

**Appeal from the Criminal Court for Shelby County**
**No. 09-06758      W. Otis Higgs, Judge**

**No. W2011-01432-CCA-R3-CD  - Filed May 10, 2012**

The defendant, Terrance Dixon, was convicted by a Shelby County Criminal Court jury of assault and criminal trespass, Class A and C misdemeanors, respectively, and sentenced to an effective term of six months to be served on probation after service of thirty days.  On appeal, he argues that the trial court erred in allowing testimony of his prior bad acts and that the evidence was insufficient to support his convictions.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Harry E. Sayle, III (on appeal) and Jim N. Hale, Jr. (at trial), Assistant Public Defenders, for the appellant, Terrance Dixon.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Betsy Weintraub and Cavett Ostner, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant was charged with aggravated assault and aggravated criminal trespass after he went to the home he had formerly shared with his estranged wife and demanded to be let in, then pointed a gun at her, and threatened to kill her when she refused.

## Motion Hearing

Prior to the start of trial, the State announced that it planned to introduce evidence of prior bad acts committed by the defendant against the victim and asked that the court rule on the admissibility of the victim's testimony concerning those acts pursuant to Tennessee Rule of Evidence 404(b).

Latasha Williams Dixon, the victim, testified that she and the defendant lived together for several years before they got married on February 14, 2003, and that the defendant became physically abusive to her shortly after they were married. He would do things such as choke and hit her and pull her hair. In June 2008, the defendant moved out of their house, and she filed for divorce. After the defendant moved out, the victim did not allow him to come back into the house, and she and the defendant "didn't communicate." He returned to the house several times after their separation, trying to get the victim to let him in. She changed the locks on the house after he moved out and did not give him a key.

The victim recalled two specific incidents involving the defendant that occurred after their separation. The first happened when she dropped her children off at school one morning and was walking to her car, and the defendant jumped out of some bushes, snatched her keys, and drove off. The second happened, on December 11, 2008, when the defendant came to her house and banged on the door demanding to be let in. The victim was afraid and did not let the defendant inside, and he eventually left. The victim reported both incidents to the police, but the defendant was not arrested.

After hearing the proof and arguments of counsel, the trial court ruled that the "[e]vidence of another crime, the assault, the taking of the keys, the trespassing of the house, and all that, are clearly relevant to show . . . motive, scheme, plan" and could also rebut a claim that it was an accident or mistake that he intentionally visited the house. The court also found that the proof of the prior acts was clear and convincing and implicitly found that the probative value was not outweighed by the danger of unfair prejudice.

## Trial

The victim testified that she and the defendant met in 1997 and dated for several years before getting married on February 14, 2003. The relationship became abusive, with the defendant choking or hitting her when they argued. The abuse "got worse," and the victim told the defendant that one of them had to move out, so the defendant left in June 2008. Their children, ages thirteen and seven at the time of trial, remained with the victim. The victim filed for divorce, but it was still pending at the time of trial. The victim also obtained an ex parte order of protection, but it expired on November 19, 2008.

The victim testified that she changed the locks on the house and did not give the defendant a key "[b]ecause [she] didn't want him in there anymore." However, one morning when she was taking the children to school, the defendant "popped up out of some bushes and snatched [the] keys out of [her] hand." Then, on December 11, 2008, he came to the house and banged on the windows and doors, demanding to be let in. The victim called the police about both incidents and filed reports, but the police told her they could not do anything because she and the defendant were still married. After they were separated, the defendant showed up at the house, uninvited, on at least ten occasions, and she never told him it was all right for him to be there.

The victim testified that on December 21, 2008, someone vandalized her car by putting sand in the engine while she was at work. She suspected that the defendant was responsible, but the police could do nothing about it. Then, on December 22, 2008, the victim was at home with her children when she thought she heard the defendant's car outside. Shortly thereafter, she heard the defendant knocking on the door and yelling to be let in. When the victim looked out the door, the defendant started cursing at her, held up a gun, and threatened to kill her. The victim ran to the back of the house and called the police. The defendant was gone when the officers arrived.

Officer Migel Clark with the Memphis Police Department testified that he responded to the victim's call on December 22, 2008 to a residence at 3167 Queensgate Avenue. The victim reported to Officer Clark that her estranged husband, who had a gun, had just been at the house banging on the door and threatening to kill her. Officer Clark noted that the victim appeared to be "[v]ery, very afraid [and] almost in tears[.]" Officer Clark was unable to find the defendant that night, but he stayed in the neighborhood for awhile "just to see if [the defendant] would show back up at the house." Over the next couple of weeks, Officer Clark checked the neighborhood periodically to make sure the victim was safe and to see if he could spot the defendant.

The defendant testified that he and the victim indeed had a volatile relationship and that they separated in the summer of 2008. He admitted that he accosted the victim outside their children's school and took her keys from her, but he explained that he did so because he still had belongings at their marital home that he wanted to retrieve. He also admitted that he filled the engine of the victim's car with sand after the victim stopped his visitation with their children for a two-month period. However, the defendant denied showing up at the house on December 11 and beating on the door. He also denied going to the house on December 22 and threatening the victim with a gun. He said that he was at his sister's apartment celebrating their mother's birthday that evening from around 7:00 until 11:00.

The defendant's mother, Loretta Dixon, and sister, LaShonda Dixon, both testified

and confirmed the defendant's alibi for December 22.

Following the conclusion of the proof, the defendant was convicted of the lesser-included offenses of assault and criminal trespass.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in allowing testimony concerning his prior bad acts against the victim and that the evidence was insufficient to support his convictions.

### I. Prior Bad Acts

The defendant argues that the trial court erred in admitting evidence that he had previously assaulted the victim, stolen her keys, and trespassed at her house. He asserts that the introduction of such evidence violated Tennessee Rule of Evidence 404(b).

Tennessee Rule of Evidence 404(b), provides as follows:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Exceptional cases in which evidence of an accused's prior bad acts will be admissible

include those in which the evidence is introduced to prove identity, intent, motive, opportunity, or rebuttal of mistake or accident. State v. Drinkard, 909 S.W.2d 13, 16 (Tenn. Crim. App. 1995); see also Neil P. Cohen et al., *Tennessee Law of Evidence* § 4.04[7][a] (5th ed. 2005). Where the trial judge has substantially complied with procedural requirements, the standard of review is abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

After holding a pretrial jury-out hearing at which the State presented the testimony of the victim about the defendant's prior acts against her during their marriage and after they separated, the court ruled that "[e]vidence of another crime, the assault, the taking of the keys, the trespassing of the house, . . . are clearly relevant to show . . . motive, scheme, plan" and also to "[r]ebut, accident, or mistake that he intentionally visited the house." The court found that proof of the prior acts was clear and convincing and also implicitly found that the probative value of the evidence was not outweighed by the danger of unfair prejudice. We note that the trial court complied with the procedural requirements of the rule. Therefore, the defendant will not be entitled to relief unless the court abused its discretion.

The defendant challenges the trial court's findings on three fronts: (1) that the evidence was not relevant to any issue other than his character; (2) that the trial court failed to weigh the probative value of the evidence against the threat of unfair prejudice; and (3) that the evidence of his prior acts was not clear and convincing.

Upon review, we conclude that the prior act evidence was properly admitted. The evidence of the defendant's prior bad acts was relevant to the issue of the defendant's intent to commit the charged offense of aggravated criminal trespass. To prove that offense, the State had to show that the defendant knew he did not have the victim's consent to enter or remain on the property and that he "intend[ed], kn[e]w[], or [wa]s reckless about whether [his] presence w[ould] cause fear for the safety of [the victim]." See Tenn. Code Ann. § 39-14-406(a)(2). At the pretrial hearing, the victim testified that the defendant came to the house several times after their separation trying to get the victim to let him in and that he had assaulted her outside their children's school and stolen her keys after she changed the locks on the house. Two weeks before the incident in this case, the defendant came to her house and banged on the door demanding to be let in. She did not let him in, and he eventually left. This evidence was relevant to show that the defendant knew he did not have permission to come to the victim's house and that he knew or was reckless about whether his presence would frighten the victim.

With regard to the defendant's contention that the trial court did not weigh the probative value of the prior act evidence against the prejudicial effect, we note that the trial court stated that it "must exclude the evidence if it[s] probative value is outweighed by the

danger of unfair prejudice" and then immediately stated that it was going to admit the evidence, implicitly making the requisite finding. The prior act evidence was highly probative of the defendant's guilt of aggravated criminal trespass and essentially the only way the State could attempt to prove that he knew he did not have the victim's consent to be at the house and that his presence would cause the victim to be in fear. The evidence was prejudicial, like any evidence tending to establish a defendant's guilt, but not unfairly so. Moreover, the victim's uncontroverted testimony about the defendant's prior bad acts against her was sufficient to meet the threshold of clear and convincing. The trial court did not abuse its discretion in allowing the evidence.

## II. Sufficiency of the Evidence

In challenging the sufficiency of the convicting evidence, the defendant argues, with regard to the assault conviction, that the evidence did not prove that the victim reasonably feared imminent bodily injury and, with regard to the criminal trespass conviction, that he still had a legal interest in the marital residence and a right to be there.

When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As relevant here, an assault is committed when one "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]" Tenn. Code Ann. § 39-13-101(a)(2). Again, the defendant argues that "any threat [the victim] feared was not imminent and was not reasonable."

In State v. Payne, 7 S.W.3d 25 (Tenn. 1999), a case of reckless endangerment, the Tennessee Supreme Court adopted the following definition of "imminent" from *Black's Law Dictionary*:

> "Near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous. Something which is threatening to happen at once, something close at hand, something to happen upon the instant, close although not yet touching, and on the point of happening."

Id. at 28 (quoting *Black's Law Dictionary* 750 (6th ed. 1990)). The court explained that in order "for the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." Id.

A panel of this court has held, in addressing the element of fear in an aggravated assault case, that "[t]he element of 'fear' is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury. Thus, the apprehension of imminent bodily harm may be inferred from the conduct of the victim following the assault." State v. Gregory Whitfield, No. 02C01-9706-CR-00226, 1998 WL 227776, at *2 (Tenn. Crim. App. May 8, 1998), perm. to appeal denied (Tenn. Dec. 7, 1998) (internal citation omitted).

In the light most favorable to the State, the evidence shows that the defendant knocked on the victim's door and yelled for her to let him in. When she looked out the door, the defendant cursed at her, held up a gun, and threatened to kill her. The victim ran to the back of the house and called the police. The victim explained that she was "afraid" and "scared" during the incident and was only thinking about "getting some help." Officer

Migel Clark, who responded to the victim's call, recalled that the victim was "[v]ery, very afraid [and] almost in tears[.]"  Officer Clark was concerned about the victim after "seeing how scared she was[.]"  In light of these circumstances, a rational trier of fact could have found that the defendant's actions caused the victim to reasonably fear imminent bodily injury.

"A person commits criminal trespass if the person enters or remains on property, or any portion of property, without the consent of the owner."  Tenn. Code Ann. § 40-14-405(a).  "'Owner' means a person in lawful possession of property . . . .  'Owner' does not include a person, who is restrained from the property or habitation by a valid court order or order of protection, other than an ex parte order of protection, obtained by the person maintaining residence on the property."  Id. § 39-14-401(3).  Again, the defendant argues that he did not commit the offense of criminal trespass because he was still married to the victim and the property had been their marital residence.

There appears to be no clear guidance on this issue.  However, two panels of this court have discussed the definition of "owner" in the context of burglary, which is in the same part of the Tennessee Code as criminal trespass.  See State v. James Anthony Burgess, No. M2009-00897-CCA-R3-CD, 2010 WL 3025524, at *4-6 (Tenn. Crim. App. Aug. 4, 2010), perm. to appeal denied (Tenn. Dec. 7, 2010); State v. George Langford, No. 02-C01-9703-CR-00099, 1997 WL 632805, at *4-6 (Tenn. Crim. App. Oct. 15, 1997), aff'd State v. Langford, 994 S.W.2d 126 (Tenn. 1999).  The James Anthony Burgess panel stated that, according to the definition of "owner" in the Tennessee Code, an individual would not be considered an "owner" and thus could be found guilty of burglary, if such person was the subject of an order restraining such person from the home but not if such order was an ex parte order.  James Anthony Burgess, 2010 WL 3025524, at *4.

The panel in George Langford noted that "courts seem to agree on the general proposition that one cannot burglarize one's own home, [but that] courts have upheld convictions of spouses who have illegally entered the former marital home or the other spouse's home[.]"  1997 WL 632805, at *4 (citations omitted).  The panel explained that "[t]hese cases usually involve situations where a separation has occurred between the parties, or where one party has established or is establishing himself or herself as the sole proprietor of the home."  Id. (citations omitted).  The George Langford panel discussed the Ohio case of State v. O'Neal, 658 N.E.2d 1102 (Ohio Ct. App. 1995), perm. to appeal denied (Ohio 1995), involving "burglary-related charges against a husband charged with killing his wife at the marital residence."  Id. at *5.  After discussing the issue in O'Neal, the panel quoted the O'Neal holding:

[w]e hold that in the absence of a restraining order or an order granting one

party exclusive possession of the marital residence, the question of whether one spouse has the sole possessory interest in the house depends on whether the evidence shows that both parties had made the decision to live in separate places. Both parties must have understood that the possessory interest of one was being relinquished, even if it was relinquished begrudgingly or reluctantly.

Id. (quoting O'Neal, 658 N.E.2d at 1104).

Taken together, these cases point us to the conclusion that the defendant could possibly still be considered an "owner" of the property and thus unable to be convicted of criminal trespass because the victim had not been granted exclusive possession of the marital residence, nor was the defendant the subject of an order restraining him from the house. However, due to the parties' separation, if the evidence showed that the victim had established herself as the sole proprietor of the home, then the defendant could be convicted of criminal trespass.

We conclude that the evidence, in the light most favorable to the State, was sufficient for a rational trier of fact to find that the victim had established herself as the sole proprietor of the former marital residence and that the defendant was thus guilty of criminal trespass. The victim testified that, after years of abuse by the defendant, she told him that one of them had to move out of the house and that their children "were going to stay in the house with whoever stayed in the house[, and] [h]e left." The victim said that she changed the locks to the house and did not allow the defendant to come back to the house. Every time the defendant came to the house uninvited after he moved out, the victim told him to leave and called the police. The victim filed for divorce and obtained an ex parte temporary order of protection. The defendant admitted that he needed a police escort to go with him to the victim's house to remove his belongings. There was sufficient evidence for the jury to conclude that the defendant was not the "owner" of the home and thus able to be convicted of criminal trespass.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE