IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2015

**STATE OF TENNESSEE v. JAMESON ROSS OWEN**

**Appeal from the Circuit Court for Bedford County**
**No. 17854     Franklin Lee Russell, Judge**

**No. M2014-02394-CCA-R3-CD – Filed September 18, 2015**

The defendant, Jameson Ross Owen, was convicted by a Bedford County Circuit Court jury of violation of an order of protection, a Class A misdemeanor, and was sentenced by the trial court to eleven months, twenty-nine days in the county jail. The sole issue the defendant raises on appeal is whether the trial court erred by admitting Rule 404(b) evidence of his alleged history of stalking the victim. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Daniel Lyn Graves II, Murfreesboro, Tennessee, for the appellant, Jameson Ross Owen.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On July 29, 2013, Jennifer Carden filed an application for an order of protection in the Bedford County General Sessions Court, seeking protection from the defendant for herself and her seventeen-year-old twins, a son and a daughter. As the basis for the order, she alleged that the defendant had been stalking her daughter since November 2012. The court granted a temporary order of protection and ordered the parties to appear in court for a hearing on August 14, 2013. On August 14, 2013, the court granted Ms. Carden and her children a permanent, one-year order of protection against the defendant.

On October 7, 2013, Ms. Carden filed an affidavit of complaint in the Bedford County General Sessions Court, alleging that, between September 25 and October 6, 2013, the defendant violated the order of protection by telephoning Ms. Carden's seventeen-year-old daughter four times, texting her ten times, and leaving two voicemails for her. Following a January 14, 2014 bench trial, the defendant was found guilty of violating the order of protection and was sentenced to eleven months, twenty-nine days in the county jail, suspended to supervised probation after three months.

On March 11, 2014, Ms. Carden filed another affidavit of complaint alleging that the defendant violated the order of protection by attempting on March 10, 2014, to contact her daughter at the daughter's place of employment. On May 19, 2014, the Bedford County Grand Jury returned an indictment charging the defendant with violation of the order of protection based on the March 10, 2014 incident.

Prior to trial, the State filed a Rule 404(b) notice of its intent to introduce evidence of the defendant's history of stalking the daughter and of his previous violation of the order of protection in order to show the defendant's "intent, common scheme or plan, absence of mistake, and guilty knowledge." Following a hearing, the trial court ruled that evidence of the defendant's "prior stalking incidents" could be introduced, as well as evidence by stipulation of the parties of his "release from the Bedford County Jail on a conviction for violation of an order of pro[tection]."

At the September 2, 2014 trial, Ms. Carden related how the defendant, who had become acquainted with her then-sixteen-year-old daughter through a social media website, began messaging, texting, and calling her daughter and repeatedly asking her out. The defendant was also calling their house phone and Facebook messaging Ms. Carden. Ms. Carden said that both she and her daughter repeatedly told the defendant, who was twenty-four, that he was too old for the daughter and that the daughter was not interested in him and to stop contacting her. The defendant, however, continued the contact, calling so frequently that Ms. Carden eventually had her home phone disconnected.

Ms. Carden testified that no one in the family had ever met the defendant in person until late October or early November 2012 when he showed up unannounced and uninvited to their Shelbyville home asking for her daughter. She said she told him to leave, but he refused to go without seeing her daughter. She finally called her reluctant daughter, who did not want to see the defendant, out on the front porch with her, her son, and the defendant so that the defendant would leave.

2

Ms. Carden testified that the defendant told her he had walked to their Shelbyville home from his home in Murfreesboro. She said she offered to drive him home because she wanted to get rid of him and wanted to find out where he lived. During that approximately thirty-mile drive, the defendant revealed that he had obtained the location of their home from codes embedded in a photograph that her daughter had posted to Instagram. The defendant also revealed that he had garnered a lot of additional information about the family, including the identity of Ms. Carden's ex-husband and where he lived, where and with whom Ms. Carden worked, and that Ms. Carden's mother had cancer.

Ms. Carden testified that she dropped the defendant off at his home, made note of the location, and told him never to come to their home again and to leave her daughter and the rest of her family alone. The defendant, however, continued the unwanted contact, calling and texting repeatedly, mailing Christmas presents and a card to her daughter in December 2012, sending her daughter five Valentine's Day gifts in February 2013, and appearing at a February 2013 high school band concert in which her daughter was performing. Sometime in April or May of 2013, the defendant again appeared uninvited on the front porch of their home, frightening Ms. Carden's children. Ms. Carden told the defendant to leave, and he got on his bicycle and pedaled off in the direction of the river.

Ms. Carden testified that she called the police because she was concerned about the defendant's state of mind. The police picked up the defendant and talked to him, but she declined their offer to press charges because she believed that the police encounter alone would be enough to make the defendant stop the unwanted contact. The defendant did not stop, however. Ms. Carden testified that the defendant showed up in the hospital room of Ms. Carden's employer, where he met the pastor of Ms. Carden's church. The pastor, who was unfamiliar with the situation, invited the defendant to attend their church and the defendant thereafter began attending services each Sunday. By that time, the defendant had slowed down his Facebook messaging to Ms. Carden, but he continued texting, calling, and Facebook messaging Ms. Carden's daughter by either having his friends make contact with her on his behalf or by contacting her himself with a "whole different account" he had created with a false name.

On July 27, 2013, the defendant showed up uninvited at the wedding of Nikita Graham, a family friend of the Cardens. The defendant was not a friend of the Grahams and Mrs. Graham "kicked him out" and "told him he had no business being there." Instead of leaving the area, the defendant sat at a fast food restaurant across the street. The next day, Ms. Carden again saw the defendant at Sunday services at her church. The following morning, she filed the petition for the order of protection at issue in this case. Ms. Carden testified that she was granted the permanent, one-year order of protection on

August 14, 2013. She said that, in addition to the written order, the judge also verbally admonished the defendant to cease all contact with her daughter.

Ms. Carden testified that the defendant continued text messaging and calling her daughter, despite the order of protection. On October 7, 2013, Ms. Carden signed a warrant against the defendant for violation of the order, and on January 16, 2014, the defendant was found guilty of violating the order and sentenced to jail. Ms. Carden testified that she was under the assumption that the defendant was still in jail when her daughter called her on March 10, 2014, to tell her that the daughter had just been informed by her employer that the defendant had showed up at the Gamestop store where the daughter held a part-time job.

Ms. Carden's daughter testified that she became acquainted with the defendant, who claimed they had a mutual friend, in late November 2012 when she accepted his Facebook "friend request." She was initially polite and exchanged casual messages with him, but over time he began messaging more and more frequently and asking her out, despite her repeatedly telling him that she had a boyfriend, that he was too old for her, and that she was not interested. She described the escalation of his behavior, including his frequent phone calls, texts and messages, increasing irritation when she did not respond quickly enough to his messages or texts, and "gross" declarations of his love for her. She testified that, at both the hearing to obtain the order of protection and at the hearing on the violation of the order, the judge had her look directly at the defendant while she told him that she wanted nothing to do with him. The judge also directly told the defendant on both occasions to stop all contact with her.

Rick Bruner, the manager of the Shelbyville Gamestop store where Ms. Carden's daughter worked, testified that the defendant called him in January 2014 to complain that he had an issue with Ms. Carden's daughter and wanted to come to the store to discuss it with Mr. Bruner. Mr. Bruner stated that he told the defendant he was aware of the order of protection and advised him that it would not be in his best interest to come to the store. He said that at approximately 2:00 or 2:10 p.m. on March 10, 2014, the barefoot defendant appeared in the store, asked to speak to him, and began trying to discuss their January 2014 phone conversation. He told the defendant he should leave, and the defendant looked around and asked, "[Ms. Carden's daughter] isn't here right now, right[?]"

The parties stipulated that the defendant reported to the Bedford County Jail on January 24, 2014, to begin serving his sentence for violation of an order of protection and was released from jail on March 10, 2014, at 1:55 p.m.

4

Bedford County General Sessions Judge Charles Rich testified that he granted Ms. Carden's petition for an order of protection because it was clear to him that "there was not a relationship [between the defendant and Ms. Carden's daughter] and that stalking was the only connection." He said he believed the defendant had "an unhealthy obsession with this young girl" and recommended that he seek professional counseling. Having the feeling that the defendant was not going to stop his behavior, Judge Rich spent more time going over the order with him than he had with any other similar defendant, telling him "unequivocally" that if he came around the girl or contacted her, either directly or indirectly, he would find him in violation of the order and put him in jail.

The defendant's mother, Terry Owen, testified that the defendant called her on March 10, 2014, to tell her that he had just been released from jail and was headed to the Shelbyville Walmart and that she arranged for her daughter to pick him up there. She further testified that the Walmart was close to the Gamestop store and that the defendant was a regular customer of various Gamestop stores in the area.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the trial court abused its discretion by admitting evidence of "a series of stalking incidents which resulted in this prosecution." The defendant argues that Ms. Carden's extensive testimony about the series of events that led to the order of protection, which he characterizes as "unrestricted prejudicial character evidence," had little, if any, probative value on the issue of whether he had violated the order of protection in the instant case and was unnecessarily cumulative and prejudicial. He asserts that there was no material issue of motive or the relationship of the parties, given his stipulation with respect to the order of protection. He further asserts that the trial court erroneously allowed the prosecution to exceed the parameters of its own order by allowing Ms. Carden's testimony about his many instances of past conduct, which she characterized as abnormal or strange but which no reasonable person could consider as "stalking events" that "resulted in this prosecution." The State argues that the trial court properly acted within its discretion in allowing evidence of the defendant's prior history of stalking in order to show the defendant's intent, common scheme or plan, or motive. The State additionally argues that the evidence was necessary to establish that the defendant "knowingly" violated the order of protection, as required under Tennessee Code Annotated section 39-13-113. We agree with the State.

Tennessee Rule of Evidence 404(b) provides as follows:

5

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

> (1) The court upon request must hold a hearing outside the jury's presence;

> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Exceptional cases in which evidence of an accused's prior bad acts will be admissible include those in which the evidence is introduced to prove identity, intent, motive, opportunity, or rebuttal of mistake or accident. State v. Drinkard, 909 S.W.2d 13, 16 (Tenn. Crim. App. 1995); see also Neil P. Cohen et al., Tennessee Law of Evidence § 4.04[7][a] (5th ed. 2011). Where the trial judge has substantially complied with procedural requirements, the standard of review for the admission of bad act evidence is abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

The defendant did not include the transcript of the hearing on the State's Rule 404(b) notice in the record before this court. The trial court's written ruling, however, reflects that a hearing was held on August 12, 2014, at which the parties were afforded the opportunity to present evidence and arguments of counsel. The trial court's order admitting the evidence states in pertinent part:

> The Court found pursuant to Rule 404(b) that a material issue exists as to the Defendant's motive for the crime on trial and as to the nature of the relationship of the Defendant to the alleged victim in the crime on trial; that evidence of a series of stalking incidents between the Defendant and the alleged victim in the crime on trial prior to the alleged incident which resulted in this prosecution would be highly probative of the Defendant's motive and of the relationship of the parties; that there was no challenge at

the Rule 404(b) hearing to the ability of the State to prove the prior incidents by clear and convincing evidence; that the probative value of the prior incident outweighs any danger of unfair prejudice to the Defendant; and that defense counsel advised in open court that he would stipulate to the fact and to the admissibility of the fact that immediately before the alleged stalking incident which is the subject of this prosecution, the Defendant was released from the Bedford County Jail from service for a sentence of forty-five days for violation of an order of protection protecting the alleged victim from the Defendant[.]

We agree with the trial court that the evidence was relevant to show the defendant's motive and the relationship of the parties and that the prejudicial impact of such evidence did not outweigh its probative value. The evidence was also relevant to rebut the defendant's implied claims of accident or mistake in entering the public store where the victim worked and to show that the defendant acted knowingly in violating the order of protection. As for the defendant's claim that the prosecution exceeded the scope of the order in the evidence it elicited, we note, like the State, that the trial court sustained the only specific objection defense counsel raised on this ground at trial. We conclude, therefore, that the trial court did not err in admitting the evidence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

7